# IN THE SUPREME COURT OF CALIFORNIA

RAUL BERROTERAN II,

Petitioner,

v.

THE SUPERIOR COURT OF LOS ANGELES COUNTY,

Respondent;

FORD MOTOR COMPANY,

Real Party in Interest.

S259522

Second Appellate District, Division One

B296639

Los Angeles County Superior Court

BC542525

March 7, 2022

Chief Justice Cantil-Sakauye authored the opinion of the Court, in which Justices Corrigan, Liu, Kruger, Groban, Jenkins, and Manella[*] concurred.

---

[*]  Presiding Justice of the Court of Appeal, Second Appellate District, Division Four, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

BERROTERAN v. SUPERIOR COURT

S259522

Opinion of the Court by Cantil-Sakauye, C. J.

We granted review to address a conflict in the Courts of Appeal regarding an exception to the hearsay rule, articulated in Evidence Code section 1291, subdivision (a)(2) (hereinafter section 1291(a)(2)), concerning testimony taken in an earlier proceeding and offered against a party to that former proceeding.[1] Petitioner and plaintiff below, Raul Berroteran II, had been a putative member of a federal multidistrict consolidated class action suit against real party in interest and defendant below, Ford Motor Company (hereinafter Ford), arising from the diesel engine used in some of Ford's vehicles in the early and mid-2000s. The federal matter settled, and Berroteran, like many others, opted out in order to pursue his own suit.

In the meantime, nine out-of-state Ford employees or former employees had given videotaped deposition testimony in the federal action or in subsequent related California opt-out litigation. In connection with Berroteran's ensuing suit in the Los Angeles County Superior Court, he filed 10 designations of deposition testimony (one witness having testified twice) listing depositions of these nine unavailable out-of-state witnesses and identifying the testimony that he proposed to introduce and present at trial. As a general matter, each deposition concerned

---

[1]   Future undesignated statutory citations are to the Evidence Code unless otherwise indicated.

1

Ford's knowledge of and ability to address defects in the engines, and its asserted concealment of those defects.

Shortly before trial in Berroteran's lawsuit was set to begin, Ford, relying on the interpretation of section 1291(a)(2) articulated in *Wahlgren v. Coleco Industries, Inc.* (1984) 151 Cal.App.3d 543 (*Wahlgren*), moved to exclude all of Berroteran's proffered deposition testimony. This aspect of the statute's hearsay exception applies when the party against whom testimony is offered "had the right and opportunity to cross-examine the declarant *with an interest and motive similar to that which*" the objecting party would have in the present trial. (§ 1291(a)(2), italics added.) The official comment accompanying that provision explains that in determining similarity of interest and motive under the statute, inquiry should focus on practical factors, and not simply on any similarity regarding the position of the party in the two settings. Interpreting the statute in light of this commentary, *Wahlgren* concluded, in essence, that the provision's hearsay exception is generally inapplicable to testimony arising from a discovery deposition.

After the trial court granted Ford's motion, Berroteran sought, and the Court of Appeal granted, a writ of mandate, directing the trial court to issue a new order denying Ford's motion. The appellate court viewed section 1291(a)(2) as reflecting no general rule against introduction of prior discovery deposition testimony, but rather the opposite: According to the court, a litigant in Ford's position has an interest and motive to examine its own witnesses during their depositions, similar to that which it would have during trial in a later related case. Indeed, the appellate court added, at each of the prior depositions, Ford had an interest and motive "to *disprove*" the

allegations of misconduct and knowledge concerning the diesel engine. (*Berroteran v. Superior Court* (2019) 41 Cal.App.5th 518, 534, italics added (*Berroteran*).) The Court of Appeal suggested that Ford bore the burden to show that it lacked a similar interest and motive — and on this record, failed to do so. (*Ibid*.)

Following full briefing by the parties and amici curiae, and a few days after oral argument in this court, the parties filed a document advising that they had "reached an agreement to settle the case on terms independent of the outcome of the opinion from this court," and that "the settlement will obviate the need for trial proceedings on the merits that would otherwise take place on remand." In light of the important issues presented, we exercise our discretion to proceed to decide the matter. (E.g., *Marin County Bd. of Realtors v. Palsson* (1976) 16 Cal.3d 920, 929 ["an appeal will not be rendered moot if the parties raise substantial questions of public interest that are likely to recur"]; *Building a Better Redondo, Inc. v. City of Redondo Beach* (2012) 203 Cal.App.4th 852, 867.) We will conclude that the appellate court's analysis is incompatible with (1) the established principle that the party proposing to introduce evidence under section 1291(a)(2)'s former testimony exception to the hearsay rule bears the burden of establishing the requirements for admission, and (2) the Legislature's official comment, reflecting its understanding when it enacted the provision at issue as part of the Evidence Code in 1965. Accordingly, we will reverse the judgment, and provide guidance for future resolution of similar issues.

## I. FACTS AND PROCEDURE

### A. The Underlying Complaint

Berroteran's first amended complaint, filed in mid-2014, asserted that in early 2006, after relying on Ford's representations that its vehicle was reliable and provided superior power, he purchased a new Ford truck equipped with a defective 6.0-liter diesel engine supplied by Navistar (hereinafter Navistar engine). The complaint alleged that notwithstanding Ford's representations, when driving the vehicle, Berroteran experienced breakdowns and lack of power while towing. Moreover, the complaint alleged, Ford's attempts to address these problems were unsuccessful, even though Ford had represented that it had fixed the engine. Consequently, Berroteran alleged, he was unable to use the truck for its intended and advertised purposes.

The complaint further alleged that Ford: "(a) rather than identifying and eliminating the root cause of these defects, produced and sold the vehicle to [Berroteran] and other consumers, knowing it contained a defective engine; (b) adopted through its dealers a 'Band-Aid' strategy of offering minor, limited repair measures to customers who sought to have the defects remedied, a strategy that reduced Ford's warranty expenditures but did not resolve the underlying defects and, in fact, helped to conceal the defects until the applicable warranties expired; and (c) intentionally and fraudulently concealed from [Berroteran] . . . these inherent defects prior to the sale or any time thereafter." The complaint claimed that "Ford was aware of its inability to repair the defects" in the Navistar engine, and asserted causes of action for fraud, negligent misrepresentation, violation of the Consumers Legal Remedies Act (Civ. Code, § 1750 et seq., hereinafter CLRA), and

violation of the Song-Beverly Consumer Warranty Act (*id.*, § 1790 et seq.).

In order to put this complaint and the corresponding evidentiary issues arising under section 1291(a)(2) into perspective, we find it useful to briefly describe the relevant underlying prior federal litigation, and the ensuing California opt-out litigation that, in turn, spawned the deposition testimony at issue here.

### B. Earlier Litigation Against Ford Concerning the Navistar Engine, and the Resulting 10 Videotaped Depositions

*1. The federal consolidated class action complaint and the six depositions related to that and predecessor federal suits*

The 2011 operative federal consolidated class action complaint[2] alleged defects in the diesel engine supplied by Navistar that Ford installed in various vehicles between 2003 and 2007. That complaint, foreshadowing those subsequently filed by others in California (including Berroteran) who opted out of the federal consolidated class action, alleged that "Ford knew from the outset that there were severe and pervasive design, manufacturing, and quality issues plaguing" the Navistar

---

[2] Berroteran was a putative class member of a federal lawsuit filed in the Southern District of California (*Burns v. Navistar, Inc.* (U.S. Dist. Ct., S.D.Cal., Feb. 23, 2011, Civ. No. 10-cv-2295-LAB-BGS) 2011 U.S. Dist. LEXIS 18147). That case, along with others, was subsequently consolidated into a federal multidistrict class action filed in the Northern District of Illinois, Eastern Division (*In re Navistar 6.0 L Diesel Engine Products Liability Litigation* (U.S. Dist. Ct., N.D.Ill., Aug. 12, 2013, Civ. Case No. 1:11-cv-02496, MDL No. 2223) 2013 WL 4052673 (*In re Navistar*)).

engine; yet Ford "never disclosed any of these issues to consumers" and failed to authorize necessary major engine repairs for its customers during the warranty period of their vehicles. In other words, the complaint asserted, Ford "simply kicked the can down the road" until each warranty expired, so that " 'the customer — not Ford — would pay for repairs.' "

The federal consolidated class action ultimately settled — preliminarily in late 2012, and finally in mid-2013. As noted, Berroteran, like many others, opted out and pursued separate suits.

In connection with the federal *In re Navistar* (see *ante*, fn. 2) and related predecessor federal suits in Illinois[3] and Texas,[4] various Ford employees and former employees were deposed. Six of those videotaped depositions, taken in Michigan and Florida, are among the ten depositions at issue in the present case. Ford's counsel consulted with each witness prior to, and represented that witness at, each deposition. Ford's counsel raised objections at each deposition, but asked no questions of these witnesses. None of these deposition

---

[3]     *Custom Underground, Inc. v. Ford Motor Company* (N.D.Ill., No. 1:10-cv-00127), concerned the performance of more than 20 Ford vehicles with Navistar 6.0-liter diesel engines purchased by that plaintiff. The case was subsequently consolidated into the federal multidistrict class action, *In re Navistar, supra*, 2013 WL 4052673.

[4]     Years prior to the federal consolidated class action litigation, *In re Navistar*, *supra*, 2013 WL 4052673, a Texas ambulance service that had purchased Ford vehicles filed *Williams A. Ambulance, Inc. v. Ford Motor Company* (E.D.Tex., No. 1:06-CV-00776). It is uncontested that the complaint in that case alleged that Ford equipped ambulances with the defective Navistar 6.0-liter diesel engine.

transcripts contains any discussion about the intended future use of the deposition.

We will briefly describe, as representative, the deposition of John Koszewnik, conducted in February 2011 in connection with the Illinois federal litigation (see *ante*, fn. 3). Koszewnik had been Ford's director of North American diesel products, responsible for investigating "failures in the field" of the Navistar engine and identifying related "root cause[s] and corrective actions." He testified that four troublesome components had been "injectors, turbochargers, EGR [exhaust gas recirculation] valves, [and] EGR coolers." He addressed related warranty problems with the engine and recounted that, as of February 2006, Ford had incurred "about 36 million [dollars] a year," and "as high as 5 million a month," in warranty expenses relating to the engine's suspect EGR valve. And yet, he testified, Ford refused to approve a replacement EGR valve or to notify owners that they should seek such an upgrade.

### 2. *Four depositions of three other Ford employees arising under three California "opt-out" suits*[5]

The subsequent videotaped depositions were conducted in California in 2015–2017 — many years after, and indeed, in light of, the above-described depositions in the federal matters. Each deponent was designated by Ford as a "person most qualified" (PMQ). Again Ford's counsel consulted with each witness prior

---

[5] In each of these California actions, the complaint tracked the claims asserted in the prior federal consolidated class action litigation and presaged those set out in Berroteran's operative complaint: (1) *Preston v. Ford Motor Company* (Super. Ct. El Dorado County, No. SC20130071); (2) *Dokken v. Ford Motor Co.* (Super. Ct. Sutter County, No. CVCS131994); and (3) *Brown v. Ford Motor Company* (Super. Ct. Butte County, No. 160060).

to, and represented that witness at, each deposition. Ford's counsel once more raised objections at each deposition — and at the conclusion of the first two depositions, briefly asked focused questions of the witness to clarify certain testimony.

The final deposition, conducted in June 2017 in connection with *Brown v. Ford Motor Company* (see *ante*, fn. 5), reflects substantial discussion about its intended future use. Because these parts of that transcript particularly implicate the evidentiary issues in the present case, we review this portion of the *Brown* deposition in some detail.

Eric Kalis appeared as Ford's PMQ concerning various matters, including the internal review and approval process conducted by Ford personnel of marketing materials provided by Ford to its dealers and customers to facilitate vehicle sales. He further testified as Ford's custodian of records. When examples of marketing publications (Ford's "Frontline Magazine," "Source Book," "Trailer Tow Guide," and sales brochures) were shown to him, Kalis confirmed that each appeared to be a Ford business record. He also presented a USB drive, referred to as "the compilation," reflecting search results concerning "12 million pages" of Ford documents that had been produced in connection with various prior Navistar engine opt-out lawsuits, and that had been introduced as trial exhibits in yet another related California opt-out case, *Margeson v. Ford Motor Company*.[6] The USB drive included emails by and to Ford employees whose

---

[6] Los Angeles County Superior Court, No. BC549430. At the time of the deposition in *Brown*, the *Margeson* suit had yielded a substantial jury verdict against Ford. Subsequently, that verdict was, in most part, recently affirmed on appeal. (*Margeson v. Ford Motor Company* (Sept. 22, 2020, B287445) [nonpub. opn.].)

depositions are at issue in the present case. In his testimony Kalis addressed those same documents and email communications, along with substantive issues such as effects of an improperly functioning turbocharger on horsepower and towing. At the close of Kalis' deposition, following an extended off-the-record discussion, counsel for both parties discussed (1) a stipulation regarding the documents referred to earlier in the deposition and (2) agreement about future use of Kalis' deposition testimony.

Regarding the documents, Ford's counsel stipulated that all of the marketing materials and, with certain exceptions, most other files contained within the USB drive — including the emails by and to Ford employees — were indeed Ford "business records for California hearsay purposes, and are true and correct copies of Ford documents." Next, after conferring with Ford's counsel, Kalis certified that these documents were "created in the normal course of business," are "true and correct," and constitute Ford "business records." Those exhibits were in turn made an exhibit to Kalis' deposition.

The parties then addressed the scope of the stipulation regarding the Ford documents, and in connection with that discussion they also addressed the future use of the transcript and video of the Kalis deposition. Counsel for the plaintiff sought to clarify that the stipulation would apply generally to all cases, not only "this case." Counsel for Ford replied: "I . . . can't do the blanket stipulation as to all [Navistar engine] matters. That doesn't mean that, . . . if you folks bring it up to the judge, that you're going to not get it through easily. It's just the onus needs to be on your side of the table in those cases." Counsel for the plaintiff responded: "Mr. Kalis is frequently identified and designated as either an expert or a [person most

knowledgeable/qualified] — perhaps both — by Ford" and that use of "these transcripts" should not be limited "to just this Brown versus Ford case." At that point, Mr. Scott Erskine, a principal counsel for Ford, who had been listening to and participating in the deposition by phone, interjected to reiterate that he, like defense counsel who was present at the deposition, had no authority to "bind other counsel."

After further discussion the parties agreed to "use a copy of the [deposition] transcript and a copy of the video for all purposes, for all [Navistar] 6.0[-liter diesel engine] cases in which [the Erskine] firm" is "currently counsel of record" — listing, in addition to *Brown*, a few other then-pending California opt-out cases (not including or mentioning the present matter). Defense counsel also reiterated that the stipulation concerning use of the documents was similarly circumscribed.[7] In response to renewed questioning by the plaintiff's counsel, Kalis clarified that, so far as he was aware, the Ford business records to which he had confirmed authenticity were relevant to "all [Navistar] 6.0 diesel" engines "in general," and his conclusion about authenticity of those documents would be the same in any case in which the same issue arose. Finally, all counsel agreed to meet and confer within two weeks about "expanding this stipulation on the use of these transcripts and the video for use in all [Navistar] 6.0

---

[7] Defense counsel stated: "[F]or the reasons that Mr. Erskine stated on the phone, . . . I just don't have the authority on that for the other outside counsel. That doesn't mean you don't have a good argument to take to a judge in one of those cases involving other counsel, it just means that I personally don't have the authority to speak on behalf of [other outside counsel] at all, about their cases."

litigation matters, irrespective of" who is counsel of record. And yet the record reflects, and we are advised of, no such further agreement.

## C. Berroteran's Designation of Passages from the 10 Video Depositions and Ford's Motion in Limine to Exclude

Berroteran designated various passages of the earlier-described video depositions, stating that he planned to play them at trial. Relatedly, he also sought to present the Ford documents and emails that had been produced in the federal consolidated class action litigation, and more recently introduced in the California opt-out trial, *Margeson v. Ford Motor Company* (see *ante*, fn. 6). As observed immediately above, Eric Kalis, Ford's PMQ and custodian of records, had certified, in deposition testimony in *Brown*, that all of these documents were indeed Ford business records. Ford filed motions in limine to exclude both categories of materials. The first, motion No. 29, which is not directly at issue here, sought to exclude Berroteran's trial exhibits. The second, motion in limine No. 30, which is at issue here, sought to exclude each of the 10 videotaped depositions described earlier as constituting inadmissible hearsay.

As observed earlier, section 1291(a)(2) recognizes an exception to the hearsay rule and allows introduction of "former testimony" if the declarant is unavailable[8] and the proponent

---

[8] As alluded to earlier, there is no dispute that all prospective witnesses at issue in this case are "unavailable" because, as out-of-state residents, they are beyond the reach of subpoena power. (See Code Civ. Proc., § 1989 [a witness is not obliged to appear in a California court unless the witness is a

shows that the objecting party had a "right and opportunity to cross-examine the declarant *with an interest and motive similar to that which*" it would have at trial in the present case. (Italics added.) Ford relied on language in *Wahlgren, supra*, 151 Cal.App.3d 543, asserting that the inquiry concerning motive and interest " 'should be based on practical considerations and not merely on the similarity of the party's position in the two cases' " (*id.*, at 546, italics omitted) — and argued that Berroteran had failed to carry his burden of showing that Ford had a similar interest or motive to cross-examine the deponents as it would at trial in the present case.

In opposition, Berroteran asserted, "[t]he deposition testimony . . . has been admitted in four jury trials in the past year and has been submitted to countless courts in connection with summary judgment motions, pretrial motions, discovery motions. . . . It is highly relevant, as it directly concerns the subject matter of this case. Ford and its army of lawyers had unlimited opportunities to prepare those 'Ford company witnesses' in advance of their testimony, had every opportunity to examine those witnesses during the depositions, and had the same or similar motive as Ford has in this case."

### D. The Trial Court's Ruling Excluding the Depositions, and the Court of Appeal's Contrary Determination

In arguing that Ford lacked similarity of interest and motive to examine the witnesses at the depositions as it would

---

resident of the state at the time of service]; Evid. Code, § 240, subd. (a)(4) [" 'unavailable as a witness' means that the declarant is any of the following: . . . [¶] . . . [¶] Absent from the hearing and the court is unable to compel his or her attendance by its process"].)

have at trial, counsel for Ford focused on an asserted *dissimilarity* between Ford's position in the depositions and in the present litigation. In this regard counsel stated repeatedly that at least some of the depositions at issue arose in the context of Ford's own separate lawsuit against "Navistar . . . for breach of contract." Based on that, counsel stressed, "it doesn't make sense that we would have a motive to cross-examine our own witnesses *in a suit by Ford against Navistar for breach of contract.*" (Italics added.) In fact, however, as our own review of the 10 depositions sought to be introduced reveals, *none* arose in that breach of contract suit setting — and instead all arose in the context of consumer actions against Ford.

In a similar vein, Ford's counsel repeatedly argued that Ford had no motive to cross-examine its own witnesses with regard to the multidistrict consolidated class action suit because those depositions were "limited to class issues" over a span of model years and, counsel asserted, discovery in that litigation was confined to those "class issues only" and "not merits issues." And yet, as we have confirmed by our own review of each deposition, in none was the testimony limited to class certification issues such as commonality and typicality — and instead each repeatedly, and in considerable detail, addressed "merits issues." Indeed, as counsel for plaintiff Berroteran stressed, the operative complaint in the present suit (and also in all other opt-out suits) was modeled on the federal complaint — and hence, counsel asserted, the depositions in the prior federal action covered "the same subject matter." Relatedly, counsel also asserted, without opposition, that in each of the four other recent California opt-out trials at which the depositions had been admitted, "Ford has [simply] counter-designated from the same

transcripts," instead of calling the deponents as live trial witnesses.

In response, the trial court stated: "My ruling would be to grant the motion in limine and exclude those deposition transcripts for the reasons argued. In terms of . . . the broadness of the other cases and lawsuits and specifics of our particular case and whether or not those cases address the specifics of our particular case — I just don't think they [do]. . . . [T]hey involve multiple issues that are not really at issue here." Yet, after counsel for Berroteran indicated that "this is going to be an issue on appeal," the trial court asked counsel to resume argument. Following that further discussion,[9] the trial court reaffirmed its

---

[9] The court asked for clarification regarding similarity with respect to the federal consolidated class action suit, *In re Navistar*. In response, counsel for Ford reprised the earlier assertion that those depositions were "limited to class issues . . . bearing on whether the class should be certified" and "didn't even deal with merits issues." Later, after again repeating that the class action depositions were "limited to class discovery," Ford's counsel ultimately conceded, "obviously there's some cross over with the merits" — yet counsel maintained that the depositions addressed "class issues, not merits issues." Moreover, Ford's counsel asserted: "Generally speaking, litigants don't have motive to cross-examine their own witness" unless, as counsel acknowledged, there are case-specific reasons for doing so — for example, if "our corporate witness is dying of terminal cancer and we need his testimony and he might not last until trial."

Counsel for plaintiff Berroteran asserted that all prior counsel understood that the depositions, each of which concerned witnesses who were "clearly going to be out of the subpoena power of many of the courts" where the cases were being litigated, "were preservation depositions. Why else would you videotape the deposition?" In this respect, counsel for Berroteran asserted, contemporaneous comments by the

original ruling.[10]

The Court of Appeal issued an alternative writ requiring the trial court either to vacate its ruling granting the motion to exclude or show cause why a peremptory writ of mandate ordering the trial court to vacate its ruling should not issue. The trial court indicated that it would not vacate its ruling. After briefing and argument, the appellate court determined that the 10 prior depositions were admissible under section 1291(a)(2). In doing so it disagreed with *Wahlgren, supra*, 151 Cal.App.3d 543, which it characterized as establishing a *"categorical* bar to admitting deposition testimony under section 1291." (*Berroteran, supra,* 41 Cal.App.5th at p. 529, italics added.) Instead, the appellate court (1) determined that a litigant in Ford's position has a similar interest and motive to examine its own witnesses during their depositions as that party would have in a later related trial based on similar subject matter, without considering any differences between the two contexts, and (2) appeared to place the burden on Ford to disprove any similarity of interest and motive — and to conclude that Ford had failed to satisfy this burden. (*Id.,* at p. 534.)[11]

_____

plaintiffs' counsel at six of the 10 depositions reflected an expectation or assumption by that counsel that those videotaped sessions would be used as evidence at any trial related to that suit.

[10]    The trial court likewise reaffirmed its earlier ruling granting motion in limine No. 29, excluding the numerous exhibits proffered by Berroteran and referenced in the Kalis deposition testimony.

[11]    The appellate court also directed the trial court to "vacate its order granting Ford's motion in limine No. 29 [see *ante,* fn. 10] concerning documentary evidence and to reconsider that

## II. THE LEGISLATURE'S COMMENT
## CONCERNING SECTION 1291, *WAHLGREN*, AND
## THE COURT OF APPEAL'S DECISION

### A. The Comment Concerning Section 1291

The Legislature has provided unusually specific guidance concerning section 1291, in the form of official commentary that originated with the California Law Revision Commission (Commission) and then became an integral aspect of the 1965 legislation enacting the Evidence Code (Stats. 1965, ch. 299).[12]

---

order in light of our ruling vacating the trial court's order regarding motion in limine No. 30." (*Berroteran, supra,* 41 Cal.App.5th at p. 536.)

[12] In 1956 the Legislature enlisted the Commission to work with other interested entities to review existing statutory provisions, many of which were then in the Code of Civil Procedure, to draft and recommend a dedicated Evidence Code. (See Cal. Law Revision Com., Recommendation Proposing an Evid. Code (Jan. 1965) at p. 29 [describing the history].) Nine years later, the Commission proposed to the Legislature such a code. (*Ibid.*) As recounted in a contemporaneous article by John R. McDonough, Chairman of the Commission, the Commission "provided a comment for each code section," explicating "the section's purpose . . . and discuss[ing] some potential problems of its meaning or application. . . ." (McDonough, *The California Evidence Code: A Précis* (1966) 18 Hastings L.J. 89, fn. 4.) As McDonough explained, and as the Commission's and Legislature's reports reflect, the resulting "comments are of special significance in the legislative history of the Evidence Code as a result of the special attention given them by the legislative committees that considered the code. Both the Assembly and the Senate Committees on Judiciary issued special reports on Assembly bill 333 (1965), which became the California Evidence Code." (McDonough, *supra,* 18 Hastings L.J. at pp. 89–90, fn. 4.) These special committee reports declared that the Law Revision Commission's comments

(See generally Cal. Law Revision Com., Evid. Code with Official Comments (Aug. 1965) at p. 1007 ["These *Comments* are especially significant in the legislative history of the Evidence Code because of the consideration given them by the legislative committees that considered the code"].)

The resulting official comment concerning section 1291 is set out verbatim in the published codes (at 29B pt. 5 West's Ann. Evid. Code (2015 ed.) foll. § 1291, pp. 86–87, and Deering's Ann. Evid. Code, vol. 2 (2021 ed.) foll. § 1291, pp. 810–811).[13] The comment reflects a distinction between two major types of former testimony — that given at a prior *trial*, and that given in

---

expressed each "committee's intent in approving the bill, except to the extent that new or revised comments were set out by the committees themselves." (*Id.* at p. 90, and legislative sources cited.) Accordingly, "for each section of the Evidence Code . . . that was revised or enacted by Assembly bill 333 there is a comment which is either a legislative committee comment that was set forth in one of the two legislative committee reports, or a Law Revision Commission comment, that was approved by the legislative committees." (*Ibid.*) In all respects relevant here, section 1291's official comment is taken verbatim from the January 1965 Commission Recommendation, *supra*, at pages 251–253. (See Cal. Law Revision Com., Evid. Code with Official Comments (Aug. 1965) at pp. 1247–1249 [memorializing the approved final version of the comment concerning section 1291]; see also *id.*, at pp. 1007–1008 [recounting the special consideration given in April 1965 by the Assembly and Senate judiciary committees to the Commission's proposed comments].)

[13] West's designates the matter as "Comment — Assembly Committee on Judiciary." Deering's designates the same as "Law Revision Commission Comments" and notes at the end, "As amended in the Legislature." As observed *ante*, footnote 12, in each publication the relevant text of the comment reflects, as pertinent here, the Law Revision Commission's January 1965 recommendation, as approved in April 1965 by the Legislature's judiciary committees.

the context of a *deposition*. The comment first explains, in general terms: "[I]f a series of cases arises involving several plaintiffs and but one defendant, Section 1291 permits *testimony given in the first trial* to be used against the defendant in a later trial if the conditions of admissibility stated in the section are met." (Com., ¶ 1, italics added.)

In its specific discussion of the statute's subdivision (a)(2) — the provision applicable in this case[14] — the comment is considerably more detailed. It states in full: "Paragraph (2) of subdivision (a) of Section 1291 provides for the admissibility of former testimony where the party against whom it is now offered had the right and opportunity in the former proceeding to cross-examine the declarant with an interest and motive similar to that which he now has. Since the party has had his opportunity to cross-examine, the primary objection to hearsay evidence — lack of opportunity to cross-examine the declarant — is not applicable. On the other hand, paragraph (2) does not make the former testimony admissible where the party against whom it is offered did not have a similar interest and motive to cross-examine the declarant. *The determination of similarity of interest and motive in cross-examination should be based on practical considerations and not merely on the similarity of the party's position in the two cases. For example, testimony contained in a deposition that was taken, but not offered in evidence at the trial, in a different action should be excluded if the judge determines that the deposition was taken for discovery purposes and that the party did not subject the*

---

[14] Section 1291 also addresses, in subdivision (a)(1), admission of former testimony submitted against a party "who offered it in evidence in his own behalf" in a prior proceeding.

*witness to a thorough cross-examination because he sought to avoid a premature revelation of the weakness in the testimony of the witness or in the adverse party's case. In such a situation, the party's interest and motive for cross-examination on the previous occasion would have been substantially different from his present interest and motive.*" (Com., ¶ 4, italics added.)

### B. *Wahlgren*

Nearly 20 years after the adoption of section 1291, the Court of Appeal in *Wahlgren, supra*, 151 Cal.App.3d 543, cited and applied the Legislature's official comment. In that case the plaintiff, who had been injured when he dove from a slide into an above ground swimming pool, sued the pool manufacturer, among others, and then sought to introduce "two depositions taken in a prior unrelated action" in which the same defendant pool manufacturer had been a party. (*Id.,* at p. 545, fn. omitted.) Relying alternatively on section 1291(a)(2), the trial court excluded the depositions. (See *post*, fn. 15.) After a jury found for the defendants, the plaintiff challenged exclusion of the deposition evidence on appeal.

Without addressing or describing the nature of the prior unrelated action in which the depositions had been taken, the Court of Appeal explained that the deponents were officers of the pool manufacturer, and "their testimony concerned [the manufacturer defendant's] policy of placing labels on pools which alerted users to the dangers of diving." (*Wahlgren, supra*, 151 Cal.App.3d at p. 545.) The appellate court affirmed the trial court's order of exclusion, determining that the deposition testimony was inadmissible under section 1291(a)(2), as

19

informed by the section's comment quoted earlier.[15]  In the process, the court asserted that as a general matter, a party's interest and motive to cross-examine its *own witnesses* at a deposition is different from the party's interest and motive to do so at trial.

The key passage from the brief opinion in *Wahlgren* reads in full: " '[A] determination of similarity of interest and motive . . . *should be based on practical considerations* and not merely on the similarity of the party's position in the two cases.' [Citing the official comment concerning § 1291, *supra*.]  Bearing this in mind, it should be noted that a deposition hearing normally functions as a discovery device.  All respected authorities, in fact, agree that given the hearing's limited purpose and utility, examination of one's own client is to be avoided.  At best, such examination may clarify issues which could later be clarified without prejudice.  At worst, it may unnecessarily reveal a weakness in a case or prematurely disclose a defense.  [¶]  In contrast, a trial serves to resolve any issues of liability.  Accordingly, the interest and motive in cross-examination increases dramatically.  Properly exercised, this right serves to clarify a litigant's position and may result in his or her complete exoneration.  Given the practical differences between each of the proceedings involved, it is therefore clear, at least with respect to [the pool manufacturer defendant, who was aligned with the

---

[15]  The trial court had initially denied admission of the depositions because they were merely notarized photocopies, not certified copies.  The Court of Appeal affirmed on that same ground, before addressing, in what appears to be dicta, the "alternative[]" ground that the depositions were properly excluded as not meeting the requirements of section 1291(a)(2).  (*Wahlgren, supra,* 151 Cal.App.3d at p. 546; see *id.,* at pp. 546–547.)

deposed witnesses], that the trial court acted properly in excluding the deposition testimony." (*Wahlgren, supra,* 151 Cal.App.3d at pp. 546–547.)

In other words, the decision in *Wahlgren* effectively construed section 1291(a)(2) as articulating a *general rule* against the use of discovery depositions such as were at issue in that case (of witnesses aligned with the defendant) in a subsequent proceeding — unless the proponent can show that the requirements of the statute, as illuminated by the Legislature's official comment, are met.[16]

## C. The Court of Appeal Decision Below

In determining that the trial court abused its discretion by excluding the 10 former depositions, the Court of Appeal acknowledged that *Wahlgren* "arguably supported Ford's argument and the trial court's conclusion." (*Berroteran, supra,* 41 Cal.App.5th at p. 529.) Yet, the appellate court explained, it disagreed with what it characterized as "*Wahlgren*'s *categorical bar* to admitting deposition testimony under section 1291 based on the unexamined premise that a party's motive to examine its witnesses at deposition always differs from its motive to do so at trial." (*Ibid.,* italics added.)

In articulating its disagreement with *Wahlgren* and reaching its conclusion that the trial court abused its discretion in granting Ford's motion to exclude the proffered depositions, the Court of Appeal was heavily influenced by the subsequently-enacted and similarly-worded federal counterpart to section

---

[16] The parties in *Wahlgren* did not seek review in this court, and the propriety of its reasoning does not appear to have been raised here since.

1291(a)(2) — Federal Rules of Evidence, rule 804(b)(1).[17] Indeed, the appellate court reasoned, federal decisions construing the federal rule should inform interpretation of the previously-enacted state statute. The court determined, after surveying some of those cases, that under the federal rule, "former deposition testimony is not categorically excluded based on an assumption that a motive to examine a witness differs during deposition and at trial" (*Berroteran, supra,* 41 Cal.App.5th at p. 531) — and that " '[a]s a general rule, a party's decision to limit cross-examination in a discovery deposition is a strategic choice and does not preclude his adversary's use of the deposition at a subsequent proceeding.' " (*Id.*, quoting *Hendrix v. Raybestos-Manhattan, Inc.* (11th Cir. 1985) 776 F.2d 1492, 1506 [observing that pretrial depositions can serve not only as discovery, but also to preserve testimony that might be unavailable at trial].)

The Court of Appeal focused on *Wahlgren*'s assertion that "[a]ll respected authorities . . . agree that given the [deposition] hearing's limited purpose and utility, examination of one's own client is to be avoided" (*Wahlgren, supra*, 151 Cal.App.3d at p. 546) — and it criticized that decision for failing to cite any support for that proposition. (*Berroteran, supra,* 41 Cal.App.5th

---

**17** That rule, adopted in 1975, states: "The following are not excluded by the rule against hearsay if the declarant is unavailable as a witness: [¶] (1) Former Testimony. Testimony that: [¶] (A) was given as a witness at a trial, hearing, or lawful deposition, whether given during the current proceeding or a different one; and [¶] (B) is now offered against a party who had — or, in a civil case, whose predecessor in interest had — *an opportunity and similar motive to develop it by direct, cross-, or redirect examination.*" (Fed. Rules Evid., rule 804(b)(1), 28 U.S.C., italics added.)

at p. 533.) The Court of Appeal characterized *Wahlgren* as asserting that "a deposition functions *only* as a discovery device" (*ibid.*, italics added) and responded: "That blanket assumption appears inconsistent with the reality of often overlapping lawsuits in different jurisdictions and the prospect that an important witness could retire or otherwise become unavailable." (*Ibid.*) In other words, the appellate court concluded, *Wahlgren* is simply out of date, "given the prevalence of videotaped deposition testimony in modern trial practice." (*Ibid.*)

Ultimately, the Court of Appeal relegated to a footnote the Legislature's official comment concerning section 1291. The court asserted that because *Ford* did not "proffer any evidence that there was any strategic reason for not cross-examining its witnesses at their depositions here," the court saw no reason to "address whether *this partial legislative history* would dictate a different outcome upon a proper and different record." (*Berroteran, supra,* 41 Cal.App.5th at p. 534, fn. 10, italics added.)[18]

---

[18] In this respect, the appellate court wrote, in full: "Ford relies on a comment regarding section 1291 from the Assembly Committee on the Judiciary in the publisher's editor's note that where 'the deposition was taken for discovery purposes' and the party did not cross-examine its own witness to 'avoid a premature revelation of the weakness in the testimony of the witness or in the adverse party's case . . . the party's interest and motive for cross-examination on the previous occasion would have been substantially different from his present interest and motive.' (Assem. Com. on Judiciary com., 29B pt. 5 West's Ann. Evid. Code (2015 ed.) foll. § 1291, p. 86.) Ford, however, did not proffer any evidence that there was any strategic reason for not cross-examining its witnesses at their

Having reached this conclusion, the appellate court found it unnecessary to address other contentions raised by Berroteran.[19]

_____

depositions here. Absent such a record, we do not address whether this partial legislative history would dictate a different outcome upon a proper and different record." (*Berroteran, supra,* 41 Cal.App.5th at p. 534, fn. 10.)

[19] Berroteran's primary argument in the trial court was that the depositions taken in the federal class action litigation are admissible under Code of Civil Procedure, section 2025.620, subdivision (g). That provision states in pertinent part: "When an action has been brought in any court of the United States or of any state, and another action involving the same subject matter is subsequently brought between the same parties . . . all depositions lawfully taken and duly filed in the initial action may be used in the subsequent action as if originally taken in that subsequent action. A deposition previously taken may also be used as permitted by the Evidence Code." (See also, e.g., *id*., § 2025.620, subd. (b) ["An adverse party may use *for any purpose*, a deposition of a party to the action, or of anyone who at the time of taking the deposition was an officer, director, managing agent, employee, agent, or designee under Section 2025.230 of a party. It is not ground for objection to the use of a deposition of a party under this subdivision by an adverse party that the deponent is available to testify, has testified, or will testify at the trial or other hearing," italics added].) In his trial briefs, Berroteran quoted the Law Revision Commission's 1965 comment to the Evidence Code's definitional section, 1290 (Law Revision Com., Evid. Code with Official Comments, *supra*, foll. § 1290, p. 1247, now set out in 29B pt. 5 West's Ann. Evid. Code (2015 ed.) foll. § 1290, p. 84, and Deering's Ann. Evid. Code, vol. 2 (2021 ed.) foll. § 1290, p. 807 [listing provisions that, as of then, "will continue to govern the use of depositions in the action in which they are taken"]), and he characterized Code of Civil Procedure, section 2025.620, subdivision (g) as a "standalone authorization for using depositions as evidence at trial . . . separate and independent from any Evidence Code provisions."

## III. DISCUSSION

We first consider section 1291(a)(2)'s language in light of the Legislature's comment and corresponding observations in leading practice guides — and conclude that the statute articulates a general rule (not a categorical bar) against admission at trial of prior testimony from a typical discovery deposition. Thereafter, we address the contrary conclusion reached by the appellate court below — and explain why we find its reasoning unpersuasive.

### A. As *Wahlgren* Implied, Section 1291(a)(2) Creates a General Rule Against Admission of Testimony from a Prior Civil Discovery Deposition

As noted, section 1291(a)(2) permits the use of prior testimony in a proceeding only if the party seeking to exclude

---

(Indeed, both of these subdivisions of Code of Civil Procedure, section 2025.620 — (b) and (g) — can be traced to at least Code Civil Proc., former § 2016, subd. (d)(2) & (4), par. 2, enacted by Stats. 1957, ch. 1904, § 2, p. 3323. Those predecessor provisions were in turn reenacted, substantively unchanged, when former section 2016 was otherwise amended by the legislation that enacted the Evidence Code [see Stats. 1965, ch. 299, § 125, at p. 1365] — and they remain in place, as renumbered, today.)

As the appellate court below observed, Berroteran advanced his argument grounded on Code of Civil Procedure, section 2025.620, subdivision (g), in his writ petition — and he further asserted that the testimony given by the three PMQs in the opt-out depositions constituted party-authorized admissions under Evidence Code section 1222. The Court of Appeal explained that because, in its view, all of the designated testimony set out in the 10 depositions was admissible under section 1291(a)(2), it would not address these additional contentions. (*Berroteran, supra,* 41 Cal.App.5th at p. 528, fn. 8.) Likewise, in this opinion, we express no view concerning the applicability of these other statutory provisions.

the testimony had "the right and opportunity to cross-examine the declarant with an interest and motive similar to that which" the same party will have "at the [present] hearing." (§ 1291, subd. (a)(2).) We are of course bound to construe and apply this statutory language. (*Smith v. LoanMe, Inc.* (2021) 11 Cal.5th 183, 190.) Doing so here, we must bear in mind that the Legislature's judiciary committees attributed special significance to the statute's official comment. (*Ibid.* [when, as the parties argue here, " ' " ' "statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's . . . legislative history' " ' " "].)[20]

As observed earlier, the comment distinguishes trial testimony from deposition testimony and recognizes, in effect, a general rule *in favor of* introducing prior *trial testimony* that is otherwise within the rule: "[I]f a series of cases arises involving several plaintiffs and but one defendant, Section 1291 permits testimony given in the first trial to be used against the defendant in a later trial if the conditions of admissibility stated

---

[20]    In Berroteran's briefing in this court, advancing his view that section 1291(a)(2), as properly construed, supports the Court of Appeal's construction of that provision, he briefly alludes to Code of Civil Procedure, section 2025.620, subdivision (g) (quoted *ante*, fn. 19). Berroteran suggests we should construe section 1291(a)(2) "in conjunction with" the Code of Civil Procedure section, in order to avoid any asserted tension with it. Because our grant of review was limited to Evidence Code section 1291(a)(2), the Code of Civil Procedure provision has not been briefed in this court and its application is not before us now. If, as Berroteran suggests, there exists any significant tension between Code of Civil Procedure section 2025.620 (key parts of which, as observed *ante*, fn. 19, predated the Evidence Code and were reenacted along with it) and section 1291(a)(2) as we interpret it, the Legislature can be expected to address that issue.

in the section are met." (Com., ¶ 1.)  This is consistent with the language of the statute's subdivision (a)(2); the defendant in a series of trials involving similar claims commonly has both the opportunity to cross-examine witnesses and a similar interest and motive to do so in each trial.

By contrast, the comment creates no such clear path regarding prior *deposition* testimony.  As noted, the comment explains that determination of similarity of interest and motive in cross-examination "should be based on practical considerations and not merely on the similarity of the party's position in the two cases."  (Com., ¶ 4.)  Moreover, it says, "testimony contained in a deposition that was taken, but not offered in evidence at the trial, in a different action *should be excluded* if the judge determines that the deposition was taken for discovery purposes and that the party did not subject the witness to a thorough cross-examination because he sought to avoid a premature revelation of the weakness in the testimony of the witness or in the adverse party's case.  In such a situation, the party's interest and motive for cross-examination on the previous occasion would have been substantially different from his present interest and motive."  (*Ibid.*, italics added.)

In drawing a distinction between the treatment of prior trial and deposition testimony, the official comment relies on and highlights the different functions of trial and deposition testimony.  Trial testimony is presented for the related purposes of providing an evidentiary foundation for a favorable judgment and persuading the trier of fact to render such a judgment.  Although depositions are sometimes conducted to preserve the testimony of a witness for trial, many are commonly conducted for the purpose of discovery.  (Haydock & Herr, Discovery Practice (2021-1 supp.) Deposition to Preserve Testimony,

§ 17.01[B] (hereinafter Discovery Practice).) The goal of discovery depositions is ordinarily twofold: to obtain information from the witness and to provide a foundation for the witness's impeachment, if necessary, at trial. Because a deposition transcript commits the witness to specific, sworn testimony on issues of significance to the litigation, it can be used to cast doubt on a deponent who departs from prior testimony on the stand. A discovery deposition, in other words, is normally intended as a *precursor* to trial testimony — not as a substitute for such testimony. (Dunne, Dunne on Depositions in California (2020–2021 ed.) Use of depositions generally, § 13:1, p. 478 (hereinafter Depositions in California).)

As these different purposes might suggest, the "interest and motive" of the party opponent in cross-examination at a discovery deposition is generally *not*, as required by section 1291(a)(2), similar to that prevailing at trial. A party commonly does have an interest and motive to conduct full cross-examination of an opponent's witness at trial. To the extent such a witness presents ostensibly favorable testimony, cross-examination is the opponent's primary tool for dispelling that appearance and, ideally, eliciting testimony favorable to the cross-examiner. By contrast, there is no fact-finding audience at a deposition, and persuasion is ordinarily a secondary consideration. Rather, the goal of an opposing party at a discovery deposition is typically to "get a 'fix' on" adverse witness testimony to be expected at trial (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group, 2021) Principal Reasons to Take Depositions, ¶ 8:419, p. 8E-3 (hereinafter Civil Procedure Before Trial), without unduly aiding the deposing party's discovery efforts (Imwinkelreid & Blumoff, Pretrial Discovery Strategy & Tactics (2021–2022 ed.)

Deposition tactics for opposing attorney, In general, § 7:1 (hereinafter Pretrial Discovery Strategy)). In this context, cross-examination of the witness risks unintentionally educating and aiding the deposing party because questioning necessarily reveals information and commits the witness to particular testimony. The interest and motive of an opposing party at a discovery deposition is therefore often *against* cross-examination of the witness, in order to avoid assisting the deposing party. (E.g., *id.*, Cross-examination of deponent, § 7:26.)

Even if there were an interest and motive for cross-examination by the opposing party at a discovery deposition, the opportunity for full and searching cross-examination may, as a practical matter, be absent. Cross-examination at trial is typically undertaken only after discovery is complete, when documents and testimony available to the parties have become known. Such cross-examination is generally conducted using the documents produced in discovery, prior trial testimony, and deposition testimony of both the witness being examined and other deposed persons. (E.g., Wegner, et al., Cal. Practice Guide: Civil Trials and Evidence (The Rutter Group 2021) Preparing for Cross-Examination — A Checklist,¶ 10:163 et seq., pp. 10-37 et seq. (hereinafter Civil Trials and Evidence).) As this suggests, effective cross-examination benefits from advance planning and a complete evidentiary record. The deposition testimony of the witness being cross-examined is an important tool because, as noted, the deposition transcript reveals the witness's likely testimony and provides material for impeachment if the witness departs from that testimony at trial. (E.g., Discovery Practice, *supra*, Rules Governing Use of Depositions at Trial, § 20.02.) Effective cross-examination at a

discovery deposition may be hindered by the absence of comparable circumstances. Accordingly, although the opposing party at a discovery deposition has an opportunity to cross-examine the deponent, that opportunity might often not be an ideal one. This, too, creates less interest and motive for cross-examination.

For these reasons, as alluded to above, leading treatises are consistent in *discouraging* opposing parties from conducting cross-examination at a discovery deposition, at least when the witness being deposed is aligned in interest with the opposing party. For example, Discovery Practice, *supra*, Questioning the Deponent, section 18.08, observes: "In what situations should you question your client deponent? The best question may be no question — the sooner the deposition is over, the better. Ordinarily, your preparation of the deponent does not include any preparation of questions. If you ask questions, you run the risk of the deponent's not understanding why you are asking a question, or responding to it in a fashion different from what you expected. Further, the more questions you ask, the more information you provide the other side; the more questions you ask, the more time the other attorney has to think about what else to ask; the more questions you ask, the more chance the other attorney has to ask still more questions." (Accord, Depositions in California, *supra*, Cross-examining own client, § 7:40, p. 277 ["Generally, it is not a good idea to cross-examine one's own client even though counsel has the right to do so. [Citation.] Through counsel's cross-examination, counsel may give the examining attorney leads or ideas for further areas of inquiry, and damaging admissions may be made."]; Civil Procedure Before Trial, *supra*, ¶ 8:711, p. 8E-111 ["Attorneys often decide *not* to ask questions at depositions of their own

clients or witnesses favorable to their side. Since there is no judge or jury present, there is usually nothing to be gained by bringing out favorable testimony via 'cross-examination.' Moreover, it may even do harm by 'educating' opposing counsel, or by allowing them to ask questions about matters they had forgotten to inquire about"]; Lisnek & Kaufman, Depositions: Procedure, Strategy & Technique (2021–2022 ed.) Rehabilitation — Questioning the Deponent, § 11:10 ["When determining whether questions of one's own client should be asked, an attorney must exercise restraint. Any questions asked by the protecting attorney create a risk of additional disclosure. Furthermore, the deponent cannot be expected to respond in a desirable manner. The examiner therefore takes a risk as to what answers will be given. In general, the protecting attorney who asks questions sends signals to the examiner that further information is out there to be gathered"].)

As we have indicated, however, not all depositions are conducted for discovery purposes, or solely for discovery. Among other purposes, depositions may preserve testimony when there is reason to believe the deponent will not later be called at trial — whether due to ill health or because of statutory provisions that allow for the use of deposition testimony at trial, given other considerations about witness availability. (E.g., Code Civ. Proc., § 2025.620, subds. (b), (c) & (g).) Practical guidance therefore acknowledges that cross-examination *may* be appropriate when a deposition serves "to preserve the testimony of a deponent who either will not or may not be

available at trial" (Discovery Practice, *supra*, Questioning the Deponent, § 18.08) and under other circumstances.[21]

In sum, and for the reasons discussed, the official comment concerning section 1291(a)(2) articulates what is, in effect, a general rule against admission at trial, by way of that statute's hearsay exception, of prior testimony from a typical discovery deposition. But it remains merely a general rule — that is, an approach to be adopted in the absence of persuasive evidence that the deposition testimony sought to be admitted satisfies the requirements of section 1291(a)(2). The party seeking admission of prior deposition testimony under that provision is free to submit evidence to the court that the deposition sought to be introduced, unlike a typical discovery

---

[21] Such circumstances may include the following, not all of which apply concerning depositions of an aligned witness. As explained in Pretrial Discovery Strategy, *supra*, Cross-examination of deponent, section 7:26: (1) "An explanation offered immediately on cross may be more credible than an excuse offered at the later trial." (2) If "[t]he deponent made several statements favoring your theory of the case, but they are 'disjointed and spread over many pages' " it might be useful to "conduct a brief cross-examination to elicit a compact restatement of the favorable passages." (3) If "[y]ou contemplate settling the case shortly after the deposition," then "reflecting the testimony in the record will improve your settlement posture." (4) "If the examining attorney is an insurance defense attorney and the deponent is the plaintiff, [that party's counsel] may want to cross-examine about injuries. The claims superintendent may review the deposition transcript and base the pretrial settlement offer in large part on the deposition. Some credible cross-examination testimony about damages may lead to a higher settlement offer." Finally, (5) if the deponent is "an opposing witness," cross-examination "is an opportunity for discovery you might otherwise not have." (*Ibid.*, fns. omitted.)

deposition, featured circumstances that provided the party opponent with an interest and motive for cross-examination similar to that at trial. Properly understood, the official comment to section 1291 imposes no categorical bar to admission of deposition testimony from a prior proceeding. It simply recognizes that the circumstances surrounding a civil discovery deposition typically do not create an interest and motive for cross-examination by the party opponent similar to that existing at trial. The party urging admission of deposition testimony bears the burden of rebutting the general rule by submitting appropriate information justifying the admission of designated deposition testimony.

## B. The Court of Appeal's Contrary Reasoning is Unpersuasive

As noted, the appellate court's conclusion was heavily influenced by its understanding of the similarly-worded federal counterpart to section 1291(a)(2) — rule 804(b)(1) of the Federal Rules of Evidence. The language in the two provisions is indeed similar. Yet the federal rule, which was enacted a decade after ours, does not come with any official comment similar to that accompanying California's 1965 enactment. And in any event, the interpretation of section 1291(a)(2) that we adopt is not contrary to what the Court of Appeal regarded as the prevailing interpretation of the federal rule — namely, that the former testimony inquiry requires a fact-specific analysis and that a similar but not identical motive is necessary to come within the former testimony hearsay exception.[22] As has been explained, a

---

[22] We note that federal courts have denied motions to introduce deposition testimony at trials in subsequent cases

deposition *may* be admissible under section 1291(a)(2) in various situations in which the party against whom it would presently be introduced did in fact have the opportunity to cross-examine the witness at the deposition with an interest and motive similar to those it has at the subsequent hearing. (See *Wahlgren, supra*, 151 Cal.App.3d at p. 546.)

But the Court of Appeal derived another rule from federal law — the proposition that " 'a party's decision to limit cross-examination in a discovery deposition is a strategic choice and does not preclude his adversary's use of the deposition at a subsequent proceeding.' " (*Berroteran, supra*, 41 Cal.App.5th at p. 531, quoting *Hendrix v. Raybestos-Manhattan Inc., supra*, 776 F.2d at p. 1506, and also citing *Pearl v. Keystone Consolidated Industries, Inc.* (7th Cir. 1989) 884 F.2d 1047, 1052.) The Court of Appeal then cited California law purportedly consistent with the idea that a party's motives and interest at trial are likely to be similar to the party's motives and interest at an earlier deposition.[23] Notably, however, the appellate court addressed

_____

even when the issues in the two cases were similar — suggesting that, consistent with our own understanding, similarity of the issues is not dispositive under the federal rule. (See, e.g., *S.E.C. v. Jasper* (9th Cir. 2012) 678 F.3d 1116, 1128 [because the S.E.C. had a different motivation in examining the witness at an early "investigat[ive]" proceeding, the transcript of the earlier testimony could not be offered against the S.E.C. at trial]; see *id.,* at pp. 1127–1129; *Securities Investor v. Bernard L. Madoff Inv.* (S.D.N.Y. 2019) 610 B.R. 197, 228 [finding no similar interest and motive in the absence of "an 'interest of substantially similar intensity to prove . . . the same side of a substantially similar issue' "].)

[23]     Although, as noted, federal law is not our touchstone here, it may be questioned whether the two federal cases cited by the

only decisions applying section 1291(a)(2) in the context of criminal trials — most affirming trial court decisions permitting *testimony given at a preliminary hearing* to be introduced at an ensuing criminal trial. (41 Cal.App.5th at p. 532, citing *People v. Ogen* (1985) 168 Cal.App.3d 611, 617 [affirming admission at trial of testimony from a preliminary hearing in a different proceeding, at which defense counsel had conducted extensive cross-examination]; and *People v. Samayoa* (1997) 15 Cal.4th 795, 850 [affirming admission at a capital penalty-phase trial of testimony elicited during a preliminary hearing at which defense counsel had conducted cross-examination designed to cast doubt on identification of the defendant].) The Court of Appeal likewise cited criminal cases stressing that "[a] party's 'interest and motive at a second proceeding is not dissimilar to his interest at a first proceeding within the meaning of . . . section 1291, subdivision (a)(2), simply because events occurring after the first proceeding might have led counsel to alter the nature and scope of cross-examination of the witness in certain particulars. [Citation.] The " 'motives need not be identical, only "similar." ' " ' " (*Berroteran, supra,* 41 Cal.App.5th at pp. 532–533, quoting *People v. Harris* (2005) 37 Cal.4th 310, 333.)

These and analogous criminal cases concern testimony arising in earlier *adjudicative hearings* at which a defendant,

---

Court of Appeal below for this proposition in fact support that view. Indeed, it appears that *Hendrix* and *Pearl* simply recited and applied the unexceptional point that actual cross-examination is not required for the former testimony exception to apply. It is not clear that either meant to suggest that a party's reasons for limiting cross-examination in a deposition are categorically irrelevant to the similarity of interest inquiry.

who may be well-armed with discovery already received from the prosecution,[24] often has an interest and motive to examine the witness in order to avoid being bound over for trial by the presiding magistrate.  In *that* setting, there frequently may be reason to find that similar interest and motive exist at the preliminary hearing and trial stages.  Yet, as the official comment concerning section 1291(a)(2) implies, and as the court in *Wahlgren* recognized, such a general rule does not naturally or normally apply with respect to civil depositions, which are never adjudicatory in nature, never subject a party to immediate jeopardy or loss of freedom, and which are, in practice, often undertaken purely (or at least primarily) for purposes of discovery.[25]

---

[24] See, e.g., *People v. Hull* (2019) 31 Cal.App.5th 1003, 1034 [independent of state criminal statutory directives, " 'a defendant has a due process right under the California Constitution and the United States Constitution to disclosure prior to the preliminary hearing of evidence that is both favorable and material, in that its disclosure creates a reasonable probability of a different outcome at the preliminary hearing' "].  By contrast, there is no comparable statutory or due process right to discovery at any stage of civil litigation. Although a party might find information in public records, and some witnesses may be available for informal interview, in civil cases most important document and witness information needed by a party, particularly a party plaintiff, frequently is under the control of the opposing party, and hence can be obtained only by discovery.

[25] Although we discern no fault in our prior decisions applying section 1291 to preliminary testimony in a criminal case, our holding concerns civil depositions only; we express no view regarding admissibility under section 1291 of other types of former testimony.

The Court of Appeal discounted *Wahlgren*'s assertion that "[a]ll respected authorities . . . agree that given the [deposition] hearing's limited purpose and utility, examination of one's own client is to be avoided" (*Wahlgren, supra*, 151 Cal.App.3d at p. 546) — and it criticized that decision for failing to cite any support for that proposition. (*Berroteran, supra,* 41 Cal.App.5th at p. 533.) As demonstrated above, however, *Wahlgren*'s observation about discovery depositions, even if not backed by citations in that opinion, is correct. There was and remains overwhelming support for the proposition that defending counsel at a civil discovery deposition typically have strategic reasons to avoid questioning an aligned witness. The Court of Appeal's conclusion that *Wahlgren* is wrong or outdated in this respect is belied by prominent treatises and practice guides such as those discussed previously.

Moreover, as Ford and its amici curiae correctly observe, videotaping, in itself, does not affect the decision whether to examine an aligned witness at deposition. The determination to videotape is ordinarily made by the deposing party, which must specify videotaping in the deposition notice (Code Civ. Proc. § 2025.220, subd. (a)(5)) and make practical arrangements for the recording. Standing alone, the videotaping of a deposition may not trigger a motive and interest to cross-examine, although it may be a relevant factor in combination with other circumstances.

Finally, as noted earlier, the Court of Appeal disregarded the Legislature's official comment concerning section 1291, relegating discussion to a footnote. The appellate court reasoned that because *Ford* did not "proffer any evidence that there was any strategic reason for not cross-examining its witnesses at their depositions," the court saw no reason to

"address whether *this partial legislative history* would dictate a different outcome upon a proper and different record." (*Berroteran, supra,* 41 Cal.App.5th at p. 534, fn. 10, italics added.)

There are multiple problems with this analysis. First, as related *ante*, part II.A (and fn. 12), in adopting section 1291 the Legislature did so only after its judiciary committees endorsed the Law Revision Commission's comment regarding that statute, distinguishing between trial and deposition testimony, and providing cautionary elaboration concerning the use of deposition testimony under the provision. It is plain that the Legislature viewed the comment as integral to interpreting and applying the statute — and indeed, Berroteran does not contend otherwise. In light of this background, a court may not dismiss the comment as mere "partial legislative history." (*Berroteran, supra,* 41 Cal.App.5th at p. 534, fn. 10.)[26]

Second, and fundamentally, the Court of Appeal's stated reason for failing to honor the comment fails. Absent an agreement among the parties concerning use of the deposition, the burden to establish the conditions of the exception to the hearsay rule articulated by section 1291(a)(2) rests with the *proponent* of admission — here, Berroteran — and not with Ford, the opponent of admission. (See, e.g., *People v. Livaditis*

---

[26]  The same observation applies concerning the Court of Appeal's assertion that "*Wahlgren*'s analysis . . . conflicts with the plain language of section 1291, subdivision (a)(2), which, on its face is unqualified: The statute states that it applies to 'the former testimony' and is not limited to former 'trial testimony.' " (*Berroteran, supra,* 41 Cal.App.5th at pp. 533–534, fn. omitted.) Again, as noted, the Legislature's official comment explicates the section's purpose and addresses its meaning and application.

(1992) 2 Cal.4th 759, 778 ["The proponent of hearsay" must "alert the court to the exception relied upon and has the burden of laying the proper foundation"], and authorities cited; see also Civil Trials and Evidence, *supra,* ¶ 8:1405, p. 8D-114, ["*the proponent must . . . establish* that the adverse party's cross-examination *motives and interests* before and now are sufficiently *similar,*" first italics added, citing the official comment concerning section 1291].) As noted, section 1291(a)(2) makes former testimony hearsay evidence admissible upon three conditions: The declarant is unavailable; the opposing party was a party to prior litigation; and the opposing party had opportunity to cross-examine with a similar motive and interest. As the cited authorities suggest, it is natural to view the proponent of admission as bearing the burden of proof on *each* of these elements. Yet the appellate court below appears to have shifted the burden of proof concerning this hearsay exception to the opponent of the evidence, Ford.[27]

---

[27]     Indeed, this aspect of the Court of Appeal's reasoning pervaded and infected its analysis. After setting forth its criticisms of *Wahlgren*, the appellate court proceeded to determine that the trial court abused its discretion in excluding the proffered video deposition testimony. In the course of its discussion the appellate court reasoned that "*Ford failed to demonstrate* any such different motive or interest here" (*Berroteran, supra,* 41 Cal.App.5th at p. 520); "*Ford offered no further explanation* why its motive to examine any specific employee or former employee differed from its motive in the current case" (*id.*, at p. 534, italics added); "*Ford made no showing* that it lacked a similar motive to examine its witnesses during their depositions" (*ibid.*, italics added); and "*Ford fails to demonstrate* that it lacked a similar motive to examine its witnesses in the former litigation" (*id.*, at p. 535, italics added). Given this, the appellate court concluded Ford did indeed have

Ultimately, the Court of Appeal reasoned, because "the gravamen of each lawsuit was the same or similar," Ford must have had a "similar motive in questioning its witnesses on the substantial overlapping allegations." (*Berroteran, supra,* 41 Cal.App.5th at p. 535.)[28] In other words, the appellate court implicitly presumed that because of the similarity of the suits and Ford's position in each, Ford had an interest and motive to cross-examine each aligned witness during each deposition. In so reasoning, the court appears to have discounted, if not ignored, the comment's admonition that "*mere*[] . . . *similarity of the party's position in the two cases*" (Com., ¶ 4, italics added) is not dispositive, and instead must yield to other "practical considerations." (*Ibid.*)

Indeed, the appellate court's undue focus on Ford's similarity of position in the various settings also led it to assert, repeatedly, that at each of the depositions "Ford had a similar motive *to disprove* the allegations of misconduct, and knowledge, all of which centered around the 6.0-liter diesel engine." (*Berroteran, supra,* 41 Cal.App.5th at p. 534, italics

---

"a similar motive to examine each of the nine deponents." (*Id.*, at p. 534, fn. omitted.) And yet Ford — the opponent of introduction, which had appeared at the non-adjudicatory civil deposition representing an aligned witness — bore no burden to prove that it *lacked* a similar interest and motive to examine its witnesses at that deposition. The burden to prove that Ford *had* a similar interest and motive rested with the proponent, Berroteran.

[28] Likewise, the appellate court observed, "The videotaped deposition testimony from the former federal and state litigations was on the same issues Berroteran raises in his current lawsuit" — and hence, the court concluded, "Ford had a similar motive to examine each of the nine deponents." (*Berroteran, supra,* 41 Cal.App.5th at p. 534, fn. omitted.)

added.)[29] And yet a party would be unlikely to have a motive or reason at a deposition of its own witness to *disprove* anything. As Ford and its supporting amici curiae observe, concluding otherwise would substantially expand and complicate deposition practice, forcing it to take on the character of a full-blown liability trial. For the reasons discussed above, the contrary views of Berroteran and amici curiae on his behalf are based on fundamental misconceptions concerning the practical considerations that must inform the requirements of section 1291.

Perhaps the Court of Appeal below was persuaded by Berroteran's repeated assertions that Ford's litigation position suggested "gamesmanship": Although Ford had not objected to introduction of the designated parts of these depositions in prior California opt-out cases, in this case, on the eve of trial, Ford asserted its purported rights under section 1291 to exclude the materials. Berroteran argues that he would have to incur the expense of deposing each out-of-state witness in order to obtain and introduce that same testimony — much of which, assertedly, consists of uncontroverted historical facts. Yet a litigant in Berroteran's position has other means of avoiding repetitive depositions, and indeed, a trial court can and should facilitate use of measures to obviate need for repeated depositions covering the same ground. Confirming uncontested matters is one purpose of interrogatories (Code Civ. Proc., § 2030.010 et seq.) and requests for admission (*id.*, § 2033.010 et seq.). Both statutes are designed to accommodate enhanced

---

[29] Later, the court reiterated, "Each deponent was represented by Ford's counsel, and Ford had the same interest to *disprove* allegations related to the 6.0-liter diesel engine." (*Id.*, at p. 535, italics added.)

use of each device (see *id.*, §§ 2030.040, 2030.050 [propounding additional interrogatories]; 2033.040, 2033.050 [propounding additional requests for admission]), and we trust that a trial court would approve such requests as warranted.  Moreover, if a party fails to comply (see *id.*, § 2023.010, subds. (d)–(h)), a court may, and we trust will, impose a broad range of appropriate sanctions (see *id.*, § 2023.030).

Finally, even if, as the Court of Appeal appears to have suggested, a presumption favoring admitting hearsay under section 1291 were supportable under the statutory scheme, that would be an unsuitably blunt tool by which to address the inefficiencies highlighted by Berroteran.  Instead, a proper application of the fact-sensitive approach that section 1291 requires, and which we outline immediately below, can be expected to appropriately guide application of this hearsay rule.

## IV.  APPROACH THAT A TRIAL COURT SHOULD UNDERTAKE IN THIS SETTING

We now address the process a trial court should undertake when determining whether, under the exception to the hearsay rule set out in section 1291(a)(2), a party seeking to exclude prior deposition testimony had "the right and opportunity to cross-examine the declarant with an interest and motive similar to that which" the same party will have at the present trial.

In light of the special significance of the Legislature's official comment described *ante,* part II.A (and fn. 12), a trial court addressing a motion to exclude under 1291(a)(2) should, consistently with that comment and the consensus views expressed in the practice guides described *ante,* part III, conduct a factually intensive inquiry, separately as to each designated deposition, as follows:

(A.) *Determining whether the parties intended, at the outset, that the deposition serve as trial testimony.* As an initial matter, the court should determine whether the parties manifested an intent to take the deposition for the purpose of preserving the witness's testimony as a proxy for trial testimony. If such intent is established, it may be inferred that all counsel had, at that deposition, a right and opportunity to examine the declarant with an interest and motive similar to that which the party would have at trial in a future case — and hence this key requirement of section 1291(a)(2), would, as general matter, be satisfied. In that situation, the burden would shift to the party opposing admission to demonstrate circumstances rebutting that conclusion.

(B.) *Determining whether the parties subsequently reached agreement concerning use of the deposition at trial in that case, or in other cases.* In many circumstances there will be no express agreement reached at the beginning of the deposition concerning its future use, or evidence that it was intended to be anything other than an ordinary discovery deposition. The court should nevertheless inquire whether the proponent of admission has shown that the parties subsequently reached agreement concerning use to which the deposition would be put, as reflected in, for example, the reporter's transcript of the deposition, or any later memorializing document. Moreover, if, as recounted *ante*, part I.B.2 (regarding the Kalis deposition taken in the *Brown* suit), the parties reach agreement at the close of a deposition concerning use in other specific related litigation, yet not regarding the litigation in which introduction is presently sought, the trial court should consider whether the now-objecting party, by having agreed to use of the deposition testimony in *some* future related case, contemporaneously

43

implied that, at the deposition at issue, it did indeed have a right and opportunity to examine the declarant with an interest and motive similar to that which it would have at trial in the present case.[30]

(C.) *Key "practical considerations."* In circumstances not falling within (A) or (B) above, and hence in which it is not evident that the parties understood that a deposition was intended for purposes other than discovery, the resulting testimony is, as *Wahlgren, supra,* 151 Cal.App.3d 543, implied, generally not made admissible by section 1291(a)(2). As noted, this statute, in essence, mandates that the opposing party have had "interest and motive" to conduct an examination similar to the type that would be anticipated at the subsequent hearing in which the testimony is to be admitted. Deposition testimony should not be admitted under this provision unless, in the manner described immediately below, the party proposing to introduce the testimony carries its burden of demonstrating that the opposing party had the required interest and motive. In this respect the proponent, consistently with the Legislature's official comment concerning section 1291(a)(2) and the consensus views expressed in the practice guides described *ante*, part III, should inform the court concerning — and the court should contemplate — various practical considerations, including the following:

---

[30] In other words: Presumably, counsel for a party would not agree to a deposition's use in *any* future different albeit related case *unless* counsel was satisfied that there had been, at that deposition, a right and opportunity to examine the declarant with an interest and motive similar to that which the party would have at trial in a future related case.

(1.) *The timing of the deposition within the context of the litigation, and special circumstances creating an incentive for cross-examination.* As observed earlier, parties may not be in a position to conduct cross-examination early in the discovery process. The same is not necessarily true of depositions taken after the parties have been educated by discovery conducted in earlier, similar lawsuits, as is the situation in this case. In addition, there may be special circumstances that create an incentive for cross-examination. Anticipating a mediation or settlement conference, for example, a party may attempt during a deposition to demonstrate the weaknesses in an opponent's case by conducting aggressive cross-examination.

(2.) *The relationship of the deponent and the opposing party.* A party rarely has an interest and motive to cross-examine deponents with whom the party has a close or aligned relationship, such as officers and employees of a corporation or family members of an individual — although that interest may be similarly low or minimal at trial.[31] Correspondingly, the likelihood of a substantial interest in cross-examination may increase as the strength of the relationship between the deponent and the opposing party diminishes or if it is

---

[31] Often a party may have reason to conduct limited examination of its own deposition witness in order to explain, circumscribe, or correct potentially misleading or damaging testimony. Standing on its own, such limited examination does not demonstrate the existence of an interest and motive to conduct the type of cross-examination that the party would undertake at trial, as is required by the statute. The proponent of admission, however, may be able to demonstrate that the opposing party would have no interest and motive to undertake a *more extensive* examination at trial compared with the interest and motive that existed at the deposition, thereby satisfying this element of admission.

antagonistic, as is sometimes the case concerning former employees of a corporation or estranged friends and relatives of an individual.

(3.) *The anticipated availability of the deponent at trial in the proceeding in which the deposition was taken, and the statutory context.* If the witness was expected to be available to testify at trial in the litigation for which the deposition was taken, this may have diminished the opposing party's motive to cross-examine. Conversely, if there was reason to believe that the witness would be unavailable, for example because the witness was not amenable to subpoena or was in ill health, the court should consider whether the now-objecting party would have had reason to anticipate that the deposition testimony might serve as a proxy for substantive testimony at trial — and have a corresponding motive and interest to treat it as such. Likewise, the motivation and interest in cross-examination may be enhanced when a statutory rule (such as those set out in Code of Civil Procedure section 2025.620, quoted *ante*, fn. 19) explicitly allows parties to use depositions as substantive evidence at the subsequent trial between the same parties, regardless of witness availability.

(4.) *Conduct at, and surrounding, the deposition — and the degree of any examination conducted by the opposing party.* Conduct such as compelling out-of-state witnesses to appear for a videotaped deposition, and references made at the ensuing deposition to "testimony for the jury," particularly by the party opposing admission, may contribute to a showing that testimony preservation was among the purposes of a deposition. Relatedly, if the party opposing admission actually undertook an apparently searching examination of the deponent, the court may determine that such conduct suggests an interest and

motive with respect to cross-examination similar to that which the party would have at trial in the present case.  Conversely, the absence of any examination of the deponent, or the limited scope of any such examination, may suggest that the party lacked the same interest and motive for cross-examination that would exist at trial in the present case.[32]

(5.)  *The particular designated testimony.*  In some circumstances, the proponent of admission may claim that the opposing party had an interest and motive to cross-examine a deponent concerning specific testimony sought to be admitted. As suggested above, there are tactical reasons why an opposing party may elect not to examine a deposition witness about particular testimony, regardless of its content.  Standing alone, therefore, the adverse or confusing nature of particular deposition testimony does not necessarily demonstrate an interest and motive to cross-examine at the deposition. Assuming, however, that the proponent is able to demonstrate with respect to particular testimony that the opposing party in fact had an interest and motive to examine at the deposition similar to that at trial, the trial court may conclude that this

---

[32]    As observed *ante*, footnote 31, however, the opposing party's interest and motive at trial may be to conduct only a limited cross-examination, and this is particularly so when the witness is aligned with that party.  Under such circumstances, the proponent of admission may be able to demonstrate that the limited examination at the deposition was consistent with a correspondingly limited motive and interest to cross-examine at trial. Regardless of the circumstances, however, any consideration of the cross-examination actually undertaken is merely *evidence* from which an interest and motive might be inferred and not an independent factor in the court's analysis.

element of admission is satisfied with respect to the designated testimony.

(6.) *"Similarity of position."* When, as appears in the present case, respective suits are shown to be substantially parallel, and the substance of the related deposition testimony correspondingly alike, nevertheless no affirmative presumption concerning similarity of interest and motive thereby arises. Instead, and although similarity of a party's position is a relevant factor in assessing that party's interest and motive in cross-examining at a deposition compared with at a subsequent trial, it is only a factor. As the Legislature's official comment stresses, "[t]he determination of similarity of interest and motive in cross-examination should be based on practical considerations" — such as those listed above — "and *not merely on the similarity of the party's position in the two cases.*" (Com., ¶ 4, italics added.)

Finally, with regard to the trial court's review and determination, it should make a record — orally, or preferably in writing — reflecting its reasoning regarding the key issue of similarity of motive and interest. (Cf. *Facebook, Inc. v. Superior Court (Touchstone)* (2020) 10 Cal.5th 329, 358 [a trial "should create a record that facilitates meaningful appellate review"].)

## V. CONCLUSIONS AND DISPOSITION

The Court of Appeal below construed *Wahlgren, supra,* 151 Cal.App.3d 543, as establishing a "*categorical* bar to admitting deposition testimony under section 1291." (*Berroteran, supra,* 41 Cal.App.5th at p. 529, italics added; see also *id.,* p. 533.) We do not read *Wahlgren* as announcing any such definitive holding. Instead, as explained previously, we view that case as appropriately construing section 1291(a)(2) to

articulate a general rule against the use of a discovery deposition in a subsequent proceeding, unless the proponent can show that the requirements of the statute, as illuminated by the Legislature's official comment, are met. If this understanding of section 1291(a)(2) is to be reconsidered or revised in the manner suggested by the Court of Appeal below, the Legislature, and not a court, should be the agent of any such change.[33]

For the reasons set out above, we reverse the Court of Appeal's judgment.

---

[33] Likewise, if, as Berroteran suggests, there is any tension with the Code of Civil Procedure (see *ante*, fn. 19), that too is a matter for the Legislature's attention and consideration.

**CANTIL-SAKAUYE, C. J.**

**We Concur:**

**CORRIGAN, J.**
**LIU, J.**
**KRUGER, J.**
**GROBAN, J.**
**JENKINS, J.**
**MANELLA, J.**[*]

---

[*] Presiding Justice of the Court of Appeal, Second Appellate District, Division Four, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  Berroteran v. Superior Court

_____

**Procedural Posture** (see XX below)
**Original Appeal**
**Original Proceeding**
**Review Granted (published)** XX 41 Cal.App.5th 518
**Review Granted (unpublished)**
**Rehearing Granted**


_____


**Opinion No.** S259522
**Date Filed:** March 7, 2022

_____


**Court:**  Superior
**County:** Los Angeles
**Judge:** Gregory Keosian


_____


**Counsel:**

Knight Law Group, Steve B. Mikhov, Lauren A. Ungs; The Altman Law Group, Bryan C. Altman, Christopher J. Urner; Greines, Martin, Stein & Richland, Edward L. Xanders, Cynthia E. Tobisman and Nadia A. Sarkis for Petitioner.

The Sturdevant Law Firm and James C. Sturdevant for Consumers for Automobile Reliability and Safety, Consumer Action, Consumer Federation of California and California Public Interest Research Group as Amici Curiae on behalf of Petitioner.

Alan Charles Dell'Ario for Consumer Attorneys of California as Amicus Curiae on behalf of Petitioner.

No appearance for Respondent.

Horvitz & Levy, Frederic D. Cohen, Lisa Perrochet, Allison W. Meredith; Sanders Roberts, Justin H. Sanders, Darth K. Vaughn and Sabrina C. Narain for Real Party in Interest.

Fred J. Hiestand for the Civil Justice Association of California as Amicus Curiae on behalf of Real Party in Interest.

Faegre Drinker Biddle & Reath and Alan J. Lazarus for the Product Liability Advisory Council, Inc., as Amicus Curiae on behalf of Real Party in Interest.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Cynthia E. Tobisman
Greines, Martin, Stein & Richland LLP
5900 Wilshire Boulevard, 12th Floor
Los Angeles, CA 90036
(310) 859-7811

Frederic D. Cohen
Horvitz & Levy LLP
3601 West Olive Avenue, 8th Floor
Burbank, CA 91505
(818) 995-0800